E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
RANDY HSIEH (Cal. Bar No. 312087)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-6585
     Facsimile: (213) 894-7819
     E-mail: Randy.Hsieh@usdoj.gov

Attorneys for Defendant
Federal Aviation Administration

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GLANCY PRONGAY & MURRAY LLP,<br><br>      Plaintiff,<br><br>v.<br><br>FEDERAL AVIATION ADMINISTRATION[1],<br><br>      Defendant. | No. 2:23-cv-08119-MCS-Ex<br><br>**DEFENDANT FEDERAL AVIATION ADMINISTRATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed Concurrently with the Declarations of Lisa Mansfield and Randy Hsieh and [Proposed] Order]**<br><br>Hearing Date:  August 19, 2024<br>Hearing Time:  9:00 a.m.<br>Ctrm:        7C<br><br>Honorable Mark C. Scarsi<br>United States District Judge |

---

[1] Plaintiff's Complaint names the Federal Aviation Administration as the sole defendant. Pursuant to 5 U.S.C. § 552, government agencies are the only proper defendants in a suit under the Freedom of Information Act. 5 U.S.C. §552(f). The Federal Aviation Administration is subordinate to the U.S. Department of Transportation, an executive department-level agency. Thus, the Department of Transportation is the proper Defendant in the case.

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                    PAGE

TABLE OF AUTHORITIES ...............................................................................iii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT............... viii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS.................................................................... 1

        A.      Plaintiff's First FOIA Request. .............................................. 1

        B.      Plaintiff's Second FOIA Request. .......................................... 3

        C.      Responsive Documents to Plaintiff's Two FOIA Requests. .... 3

                1.      Responsive Documents to the First FOIA Request...................... 3

                2.      Responsive Documents to the Second FOIA Request................... 4

                3.      Description of the Responsive Documents................................. 4

        D.      The FAA's AIR VDRP Program.......................................... 5

        E.      Plaintiff's Subsequent Meet and Confer Letter........................ 7

III.    LEGAL STANDARD .......................................................................... 7

        A.      Applicable FOIA Standards.................................................. 7

        B.      Applicable Summary Judgment Standards.............................. 8

IV.     ARGUMENT........................................................................................ 9

        A.      The FAA Conducted an Adequate Search for Records. ........... 9

                1.      The First FOIA Request...................................................... 10

                2.      The Second FOIA Request ................................................... 11

                3.      The FAA's Subsequent Search ............................................. 11

        B.      The FAA Properly Withheld Information Under Applicable FOIA Exemptions.............................................. 12

                1.      Exemption (b)(3) ................................................................. 12

                        a.      49 U.S.C. § 40123.......................................... 13

                        b.      14 C.F.R. Part 193 ......................................... 13

# TABLE OF CONTENTS (CONTINUED)

DESCRIPTION                                                                                          PAGE

       c.    FAA Order 8000.89 and Advisory Circular 00-68 .............. 14

   2.    Exemption (b)(4) ....................................................... 14

       a.    The Withheld Information is Commercial ......................... 15

       b.    The Withheld Information Was Obtained from a Person ..... 15

       c.    Boeing Actually and In Practice Treats The Withheld Information as Confidential and/or Closely Held ............... 16

       d.    The FAA Has Provided Explicit and Implied Assurances to Boeing That the FAA Will Keep Proprietary Information Contained in AIR VDRP Submissions Private ............................................................. 16

   3.    Exemption (b)(6) ....................................................... 17

  C.    The FAA Provided a Sufficiently Detailed *Vaughn* Index to Identify and Explain Its Withholdings ................................................. 17

  D.    The Records at Issue Were Not "Reasonably Segregable." ................... 18

V.   CONCLUSION .......................................................................... 19

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                          PAGE

**Cases**

*Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*,
   830 F.2d 331 (D.C. Cir. 1987).................................................................... 12, 13

*ACLU of Southern Cal. v. Dep't of Homeland Security*,
   2012 WL 5342411 (C.D. Cal. Oct. 25, 2012) ......................................... 10

*Balridge v. Shapiro*,
   455 U.S. 345 (1982) ............................................................................... 12

*Berman v. CIA*,
   501 F.3d 1136 (9th Cir. 2007)..................................................................8

*Campaign for Responsible Transplantation v. FDA*,
   180 F. Supp. 2d 29 (D.D.C. 2001) ......................................................... 18

*Center for Nat'l Sec. Studies v. DOJ*,
   331 F.3d 918 (D.C. Cir. 2003)..................................................................7

*CIA v. Sims*,
   471 U.S. 159 (1985) ............................................................................ 7, 12

*Citizens Comm'n on Human Rights v. FDA*,
   45 F.3d 1325 (9th Cir. 1995)............................................................... 9, 10

*Clay v. Dep't of Justice*,
   680 F. Supp. 2d 239 (D.D.C. 2010)....................................................... 10

*Critical Mass Energy Project v. NRC*,
   975 F.2d 871 (D.C. Cir. 1992)................................................................ 14

*Def. of Animals v. NIH*,
   543 F. Supp. 2d 83 (D.D.C. 2008) ......................................................... 10

*Department of Air Force v. Rose*,
   425 U.S. 352 (1976) .................................................................................7

*Department of the Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................8

*Dow Jones Co. v. FERC,*
  219 F.R.D. 167 (C.D. Cal. 2003) .........................................16

*Food Marketing Inst. v. Argus Leader Media*,
  588 U.S. 427 (2019) ............................................................15

*Forest Service Empls. for Envtl. Ethics v. U.S. Forest Serv.*,
  524 F.3d 1021 (9th Cir. 2008) ............................................17

*Gen. Servs. Admin. v. Benson*,
  415 F.2d 878 (9th Cir. 1969) ..............................................15

*Goland v. CIA*,
  607 F.2d 339 (D.C. Cir. 1978) ............................................13

*Hamdan v. U.S. Dep't of Justice*,
  797 F.3d 759 (9th Cir. 2015) ..............................................19

*Hinton v. Dep't of Justice*,
  844 F.2d 126 (D.C. Cir. 1988) ............................................18

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ............................................10

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ..........................................................7, 8

*Johnson v. Exec. Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ............................................19

*Kay v. FCC*,
  976 F. Supp. 23 (D.D.C. 1997) ..........................................18

*King v. Dep't of Justice*,
  830 F.2d 210 (D.C. Cir. 1987) ............................................17

*Kissinger v. Reporters Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ..............................................................8

iv

*Lahr v. Nat'l Transportation Safety Board,*
  569 F.3d 964 (2009) ...................................................................... 9

*Lane v. Dep't of Interior,*
  523 F.3d 1128 (9th Cir. 2008) ................................................ 9, 10

*Lion Raisins v. Dep't of Agriculture,*
  354 F.3d 1072 (9th Cir. 2004) ...................................................... 18

*Miller v. Casey,*
  730 F.2d 773 (D.C. Cir. 1984) ........................................................ 8

*Minier v. CIA,*
  88 F.3d 796 (9th Cir. 1996) ........................................................ 8, 9

*Nadler v. FDIC,*
  92 F.3d 93 (2d Cir. 1996) .............................................................. 15

*Nation Magazine v. U.S. Customs Serv.,*
  71 F.3d 885 (D.C. Cir. 1995) .......................................................... 9

*Nat'l Parks and Conservation Ass'n v. Morton,*
  498 F.2d 765 (D.C. Cir. 1974) ...................................................... 14

*Oglesby v. U.S. Dep't of Army,*
  79 F.3d 1172 (D.C. Cir. 1996) ................................................ 17, 18

*Oglesby v. U.S. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) .................................................... 9, 10

*Pac. Fisheries Inc. v. United States,*
  539 F.3d 1143 (9th Cir. 2008) ...................................................... 19

*SafeCard Servs. Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ...................................................... 9

*Spurlock v. FBI,*
  69 F.3d 1010 (9th Cir. 1995) .......................................................... 8

*Van Bourg, Allen, Weinberg & Roger v. NLRB,*
  728 F.2d 1270 (9th Cir. 1984) ...................................................... 17

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973)........................................................... viii, 1

*Watkins v. U.S. Bureau of Customs & Border Prot.*,
   643 F.3d 1189 (9th Cir. 2011) ............................................................. 14

*Willamette Indus., Inc. v. United States*,
   689 F.2d 865 (9th Cir. 1982)................................................................ 18

*Yonemoto v. Dep't of Veterans Affairs*,
   686 F.3d 681 (9th Cir. 2012)............................................................ 8, 18

*Zemansky v. EPA*,
   767 F.2d 569 (9th Cir. 1985)..................................................................9

**Statutes**

5 U.S.C. § 551(2) (2018)............................................................................ 15

5 U.S.C. § 552 ..............................................................................................1

5 U.S.C. § 552(a)(4)(B).................................................................................8

5 U.S.C. § 552(b).................................................................................... 8, 18

5 U.S.C. § 552(b)(4)................................................................................... 14

5 U.S.C. § 552(b)(6)................................................................................... 17

5 U.S.C. §§ 552(b)(3)......................................................................... 1, 9, 12

5 U.S.C. §§ 552(b)(5)................................................................................. 18

49 U.S.C. § 40123 ............................................................................ . 5, 6, 13

49 U.S.C. § 40123(b) ................................................................................. 13

**Regulations**

14 C.F.R. Part 193 ............................................................................ 13, 14

14 C.F.R. § 193.5(a) (2001)................................................................... 13

14 C.F.R. § 193.5(d) (2001) .................................................................. 13

14 C.F.R part 193 ........................................................................... 6, 13

14 C.F.R. § 193.9 (2001) ...................................................................... 14

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that, on August 19, 2024 at 9:00 a.m., or as soon thereafter as it may be heard, defendant Federal Aviation Administration ("FAA") will, and hereby does, move this Court for an order granting summary judgment under Federal Rule of Civil Procedure 56 in favor of the FAA and against plaintiff Glancy Prongay & Murray LLP ("Plaintiff"). This motion will be made in the First Street Federal Courthouse before the Honorable Mark C. Scarsi, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

The FAA brings this motion on the grounds that Plaintiff cannot raise a genuine dispute of material fact or otherwise prevail on its claim against the FAA and that the FAA is therefore entitled to judgment as a matter of law.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the Declarations of Lisa Mansfield and Randy Hsieh filed concurrently herewith, the previously filed Declarations of John Piccola (ECF 25-2), Daniel J. Elgas (ECF 25-3), and Jennifer Nowak (ECF 25-4), the *Vaughn* index[2] (ECF 15-1), and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on May 29, 2024 via telephone.

///
///
///
///
///

---

[2] When an agency faces challenges to its reliance on particular exemptions in FOIA litigation, a *Vaughn* Index is a device that is commonly used, in conjunction with supporting declarations, to make the agency's evidentiary showing. The term arose from the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), in which such an index was required to determine the validity of the agency's withholdings.

1

2                                    Respectfully submitted,

3    Dated: June 5, 2024            E. MARTIN ESTRADA
                                    United States Attorney
4                                   DAVID M. HARRIS
                                    Assistant United States Attorney
5                                   Chief, Civil Division
                                    JOANNE S. OSINOFF
6                                   Assistant United States Attorney
                                    Chief, Complex and Defensive Litigation Section
7

8                                    */s/ Randy Hsieh*
9                                   RANDY HSIEH
                                    Assistant United States Attorney
10
                                    Attorneys for Defendant Federal Aviation
11                                  Administration

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action concerns two Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests by Plaintiff Glancy Prongay & Murray LLP ("Plaintiff") to the Federal Aviation Administration ("FAA"). The requests seek disclosure of documents related to certain alleged quality issues in the manufacture and assembly of components by Spirit AeroSystems for the Boeing 737 MAX airliner. In response to the FOIA requests, the FAA conducted searches, located documents, and identified 452 pages of records responsive to Plaintiff's two FOIA requests.

After careful review, the FAA withheld all 452 pages in their entirety. The FAA made withholdings in accordance with FOIA exemptions 3, 4 and 6. Indeed, as of the date of this filing, the FAA has satisfied all of its obligations with respect to Plaintiff's FOIA requests. First, the FAA has conducted searches reasonably calculated to uncover all records responsive to Plaintiff's FOIA requests. Second, the FAA properly withheld information pursuant to FOIA exemptions 3, 4, and 6. *See* 5 U.S.C. §§ 552(b)(3), (4), (6). Third, the FAA clearly identified and described the withholdings and the exemptions in the *Vaughn* index and associated declarations. *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973) (setting forth the procedural requirements for identifying documents at issue in a FOIA case). Furthermore, the FAA reviewed the documents and determined that no information was reasonably segregable. Because there are no material facts in dispute with regard to the adequacy of FAA's search or the propriety of FAA's withholding of responsive documents, the FAA is entitled to summary judgment with respect to all claims asserted by Plaintiff in this action.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's First FOIA Request.

On or about August 3, 2023, via the FAA's Online FOIA form, Plaintiff submitted the following FOIA request to the FAA:

> "This request concerns the defective manufacturing process used by Spirit
> AeroSystems on certain 737 MAX airplanes for Boeing, involving the
> incorrect installation of two fittings that join the aft fuselage to the vertical
> tail. This problem began to be widely reported in the media on April 13, 2023,
> with reports indicating that the FAA was discussing the issue with Spirit
> AeroSystems        and        Boeing,        for        example:
> https://www.reuters.com/business/aerospace-defense/boeing-pauses-
> deliveries-some-737-maxs-amid-new-supplier-problem-2023-04-13/
> Specifically, I request the following two categories of records: (1) documents
> sufficient to show when and how the FAA first learned of the tailfin fitting
> problem; and (2) documents sufficient to show every occasion when Spirit
> AeroSystems was notified of the tailfin fitting problem by its employees or
> otherwise learned of the problem."

Declaration of Randy Hsieh ("Hsieh Decl.") ¶ 2. The FOIA request was assigned tracking number: 2023-07715. Declaration of John Piccola ("Piccola Decl.") (ECF 25-2) ¶ 6.

Because the FOIA request sought records relating to the manufacturing of the 737 MAX, the request was assigned to the Integrated Certificate Management Division ("ICM Division") of the FAA for processing. *Id.* ¶ 8. The ICM Division provides oversight of the certification, system oversight and continued operational safety functions of Boeing aircraft production, among other responsibilities. *Id.* ¶ 3. On August 11, 2023, the request was assigned to the System Operation & Oversight Branch ("SOO Branch") to search and process responsive records. *Id* ¶ 8. Similarly, the SOO Branch is responsible for the oversight of Boeing's commercial aircraft manufacturing. *Id.* At the time Plaintiff's FOIA request was assigned to the SOO Branch, subject matter experts noted that any responsive records would be exempt under the FOIA due to an open investigation. *Id.* As such, the FAA provided Plaintiff with a "full denial" response under FOIA exemption 7(A) on August 23, 2023. *Id.*

On August 29, 2023, Plaintiff appealed the FAA's August 23, 2019 "full denial." *Id.* ¶ 9. Plaintiff initiated this instant litigation before the FAA's determination of the Plaintiff's appeal. *Id.* ¶ 10.

**B.    Plaintiff's Second FOIA Request.**

On August 29, 2023, Plaintiff submitted a second FOIA request related to a "quality issue involving elongated fastener holes on the aft pressure bulkhead on certain models of the 737 fuselage produced by Spirit AeroSystems." *Id.* ¶ 15. Plaintiff sought, in pertinent part, as follows:

"(1) documents sufficient to show when and how the FAA first learned of the elongated fastener hold problem; and (2) documents sufficient to show every occasion when Spirit AeroSystems was notified of the elongated fastener hole problem by its employees or otherwise learned of the problem."

*Id.*

This second FOIA request was assigned tracking number: 2024-000259. *Id.* ¶ 16. Plaintiff initiated this instant litigation before the FAA issued its initial response to the second FOIA request. *Id.* As with Plaintiff's first FOIA request, this second request was also assigned to the SOO Branch for processing, as it sought records relating to fuselages produced for Boeing by Spirit AeroSystems. *Id.*

Plaintiff filed this instant action on September 28, 2023.

**C.    Responsive Documents to Plaintiff's Two FOIA Requests.**

**1.    <u>Responsive Documents to the First FOIA Request.</u>**

On October 23, 2023, the SOO Branch conducted a comprehensive search for documents responsive to Plaintiff' first FOIA request in the FAA's Compliance Enforcement Action application where all Boeing Voluntary Disclosure Reporting Program ("VDRP") reports are uploaded into and retained in once they are received from Boeing.[3] The SOO Branch located 84 pages of responsive records. *Id.* ¶ 12. Of those 84

---

[3] The purpose of the Voluntary Disclosure Reporting Program is discussed in the section below.

pages located: 1) one document was approximately 79 pages long and contained a letter with enclosed supporting documentation from Boeing to the Airplane Oversight Section; 2) there was one two-page letter from the Airplane Oversight Section to Boeing; and 3) there were three pages of emails between the FAA and Boeing discussing the letters.[4] *Id.* Upon review, those records were determined to be exempt in full from release pursuant to FOIA exemption 3, and in part, under FOIA exemptions 4 and 6. *Id.*

### 2.    Responsive Documents to the Second FOIA Request.

On October 19, 2023, the SOO Branch conducted a comprehensive search in the FAA's Compliance Enforcement Action application for the documents sought in Plaintiff' second FOIA request. *Id.* ¶ 17. The SOO Branch located 368 pages of responsive records, all of which were found to be subject to protection in full from public disclosure under FOIA exemption 3, and in part, under exemptions 4 and 6. *Id.* Among the records was one 364-page document containing a letter with enclosed supporting documentation from Boeing to a Principal Inspector ("PI") for Boeing. *Id.* The PI is the manufacturing inspector who is assigned certificate management responsibility for Boeing. *Id.* In addition, the following documents were located: a two-page letter from the Airplane Oversight Section and two pages of emails between the FAA and Boeing discussing where the letters were located. *Id.*

### 3.    Description of the Responsive Documents.

As described above, records responsive to both the Plaintiff's first and second FOIA requests fall under three categories: (1) letters and supporting enclosures containing Boeing's submissions to the FAA, (2) email communications between the FAA and Boeing discussing Boeing's submissions, and (3) two letters from the FAA to Boeing acknowledging Boeing's submissions. *Id.* ¶ 20.

---

[4] The SOO Branch is organized into four sections, including the Airplane Oversight Section, which provides oversight of Boeing commercial aircraft production. Piccola Decl. ¶ 3.

The letters (one is responsive to each FOIA, respectively) from Boeing to the FAA were submitted to the FAA under the auspices of the Aircraft Certification Service ("AIR") VDRP and contain subject lines and markings identifying the remainder of the content (including the enclosures) as relevant to the AIR VDRP submission. *Id.* ¶ 21. The letters also contain supporting enclosures submitted to the FAA through the AIR VDRP. *Id.*

The second category of records responsive to Plaintiff's FOIA requests are routine email correspondence between the FAA and Boeing discussing Boeing's AIR VDRP submissions. *Id.* ¶ 22. These emails contain general discussions of the status of the AIR VDRP reports and the timing of responses, and the reports contain the names and contact information of lower-level Boeing employees as well as the names and contact information of FAA employees who work with Boeing who were responsible for processing the AIR VDRP submissions. *Id.*

The final category of records responsive to Plaintiff's FOIA requests are letters from the FAA to Boeing, acknowledging the AIR VDRP that Boeing submitted and describing the next steps that Boeing must fulfill, as well as the timing of those steps. *Id.* ¶ 23.

### D.    The FAA's AIR VDRP Program.

The Aviation Safety Organization ("AVS") is a component of the FAA that is responsible for the certification, production approval, and continued airworthiness of aircraft, in addition to certification of pilots, mechanics, and others in safety-related positions. Declaration of Daniel J. Elgas ("Elgas Decl.") (ECF 25-3) ¶ 2. The AIR is the office within AVS that is responsible for the oversight of design and production approvals, airworthiness certification, and continued airworthiness programs of all U.S. civil aviation products and foreign import products. *Id.*

The AIR has a Voluntary Disclosure Reporting Program ("VDRP"), which was established pursuant to the FAA's authority at 49 U.S.C. § 40123 to protect from disclosure records related to voluntary reports of apparent noncompliance to regulations

related to the design, manufacturing, airworthiness, and certification of certificated aircraft. *Id.* ¶ 3. VDRPs are designed to encourage individuals and entities that hold FAA certificates to voluntarily self-disclose a regulatory non-compliance or safety-related issue. *Id.* ¶ 5. Generally, they serve as a way for employees of entities or entities the FAA regulates, such as aircraft manufacturers, to voluntarily report safety and security-related information in an effort to help prevent future aircraft accidents or incidents. *Id.* The receipt of VDRP submissions likewise is critical in fulfilling the FAA's safety and security responsibilities in many ways, and the FAA believes that regulated entities and their employees would be less likely to provide VDRP information to the government if those reports were not kept from public disclosure. *Id.* ¶¶ 13-14.

Further, 49 U.S.C. § 40123 requires the FAA to issue regulations to implement the statute. *Id.* ¶ 6. Accordingly, in 2001, the FAA issued its implementing regulations at 14 C.F.R part 193 ("Part 193"). *Id.* Part 193 permits the FAA to designate certain information as protected from public disclosure. *Id.* To protect information under a VDRP, the FAA must publish an order defining the criteria a submission must meet to qualify for protection. *Id.* The FAA also publishes a Federal Register notice designating the information as protected, and allows the public an opportunity to provide comments on the notice. *Id.* ¶ 7. When the FAA receives submissions through a VDRP, the submissions are vetted through established processes to ensure they meet all criteria before the FAA accepts them; submissions that do not meet the criteria are rejected. *Id.* ¶¶ 16, 18, 19, 22. Once a report has been accepted through a designated VDRP, the FAA is required to protect it from disclosure, including disclosure through FOIA. *Id.* ¶ 20.

Here, the FAA has designated information that is submitted via an AIR VDRP submission to be protected from public disclosure as delineated in FAA Order 800.89, and published a corresponding Federal Register notice. *Id.* ¶¶ 8-9. Specifically, FAA Order 8000.89 protects from disclosure, a description of the apparent violation and verification that the noncompliance has ceased, immediate actions taken to terminate the conduct that resulted in the apparent violation, and the person responsible for taking

immediate action. *Id.* ¶ 9. Additionally, information contained in the regulated entity's detailed written report is protected from disclosure. *Id.* These reports which are often in the form of letters or emails, from the regulated entity to the FAA typically contain supporting documentation that can contain proprietary information belonging to the entity. *Id.* FAA-generated documentation and electronic information that is directly associated with an accepted VDRP report is also protected from disclosure by FAA Order 8000.89. *Id.* ¶ 10.

### E.    Plaintiff's Subsequent Meet and Confer Letter.

On May 8, 2024, subsequent to the filing of the Declarations of John Piccola, Daniel J. Elgas and Jennifer Nowak, and the *Vaughn* Index in this action, Plaintiff provided a letter stating that it believed the FAA's search for records responsive to its two FOIA requests was not sufficient. *See* concurrently filed Declaration of Lisa Mansfield ("Mansfield Decl.") ¶¶ 6-7. In response to Plaintiff's query, the FAA initiated a supplemental search for records within the AIR and the Office of Audit and Evaluation, yielding no responsive documents. *Id.* ¶¶ 17-27.

## III.    LEGAL STANDARD

### A.    Applicable FOIA Standards.

FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citing *Department of Air Force v. Rose*, 425 U.S. 352, 360-361 (1976)). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-167 (1985). Accordingly, in passing FOIA, "Congress sought 'to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *John Doe Agency*, 493 U.S. at 152 (*quoting* H.R. Rep. No. 89-1497, at 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2423); *see also Center for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck

by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential.").

FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exceptions. *See* 5 U.S.C. § 552(b). "A district court only has jurisdiction to compel an agency to disclose improperly withheld agency records," i.e., records that do "not fall within an exemption." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *see also* 5 U.S.C. § 552(a)(4)(B) (giving the district court jurisdiction only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"). Although FOIA's statutory exemptions are to be narrowly construed, *see Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), courts must also give those exemptions "meaningful reach and application," *John Doe Agency*, 493 U.S. at 152. "Requiring an agency to disclose exempt information is not authorized." *Minier*, 88 F.3d at 803 (quoting *Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir. 1995).

### B.    Applicable Summary Judgment Standards.

Most FOIA cases are resolved on summary judgment. *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. FDA,* 836 F.3d 987 (9th Cir. 2016), *rev'd*, 839 F.3d 750 (9th Cir. 2016). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). Summary judgment may be granted to an agency in a FOIA case on the basis of information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (citing *Miller v. Casey*, 730

F.2d 773, 776 (D.C. Cir. 1984)). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quotations and citations omitted). In evaluating an exemption claim, a court "must accord substantial weight to [the agency's] affidavits." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (quotation omitted).

## IV.    ARGUMENT

The FAA has satisfied its obligations under FOIA with respect to Plaintiff's request. As the Declarations of John Piccola and Lisa Mansfield, and *Vaughn* Index establish, and as described more fully below, the FAA conducted searches that were reasonably calculated to locate all responsive records. The agency properly applied FOIA exemptions to withhold information protected from disclosure by FOIA exemptions 3, 4, and 6. 5 U.S.C. §§ 552(b)(3), (4), (6). Those withholdings were necessary and appropriate to protect voluntarily submitted safety reports, commercial information not available to the public, and private individuals' personal privacy information. Because Defendant has not improperly withheld any non-exempt responsive records, there is no genuine issue as to any material fact and summary judgment should be granted in favor of Defendant.

### A.    The FAA Conducted an Adequate Search for Records.

In FOIA cases, "[t]he adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citing *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). An agency's search for records is considered "adequate" if it was conducted "using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Lahr*, 569 F.3d at 986; *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (the agency need only show that "the search was reasonably

9

calculated to discover the requested documents, not whether it actually uncovered every document extant."). The "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Citizens Comm'n on Human Right*, 45 F.3d at 1328; *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). An agency's search need not be exhaustive, merely reasonable. *Oglesby*, 920 F.2d at 68. The agency need not search every record system, but must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Id.*

Under FOIA, the agency's burden is to establish that it has conducted a search "reasonably calculated to uncover all responsive documents." *ACLU of Southern Cal. v. Dep't of Homeland Security*, 2012 WL 5342411, at *1 (C.D. Cal. Oct. 25, 2012) (quoting *Lane*, 523 F.3d at 1139). The agency bears the burden of demonstrating the adequacy of the search by providing a declaration that contains "reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lane*, 523 F.3d at 1139 (citing *Lewis v. IRS*, F.2d 375, 378 (9th Cir. 1987)). Such affidavits should "'set[] forth the search terms and type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched.'" *Clay v. Dep't of Justice*, 680 F. Supp. 2d 239, 245 (D.D.C. 2010) (quoting *Ogelsby*, 920 F.2d at 68); *In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 98 (D.D.C. 2008) ("To meet its burden, the agency may submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search.").

1.    The First FOIA Request

Here, the FAA conducted an extensive search for records because it searched in all locations where responsive documents are likely to be located. With respect to Plaintiff's first FOIA request, the SOO Branch conducted a thorough search of FAA's Compliance Enforcement Action application where all Boeing VDRP reports are uploaded into and

retained. Piccola Decl. ¶¶ 8, 11, 12. Upon a full search, 84 pages of records were located including 1) one document that was approximately 79 pages long and contained a letter with enclosed supporting documentation from Boeing to the Airplane Oversight Section; 2) a two-page letter from the Airplane Oversight Section to Boeing; and 3) three pages of emails between the FAA and Boeing discussing the letters. *Id.* ¶ 12.

Additionally, the SOO Branch also attempted to locate records of phone calls from Boeing to the FAA that would be responsive to the request. *Id.* ¶ 13. However, the SOO Branch employee who would have any responsive phone calls noted that the call would have been received on his FAA-issued cellular telephone. *Id.* He noted that at the time he conducted the search, he did not yield any records responsive to the request. *Id.* Additionally, the FAA does not currently possess a way to electronically search for call logs on FAA-issued cellular telephones. *Id.*

### 2.    The Second FOIA Request

With respect to Plaintiff's second FOIA request, the FAA likewise conducted a thorough search of FAA's Compliance Enforcement Action application. *Id.* ¶ 17. Upon a full search, 368 pages of responsive records were located. *Id.* Among the records was one 364-page document containing a letter with enclosed supporting documentation from Boeing to the Airplane Oversight Section. *Id.* Additionally, one two-page letter from the Airplane Oversight Section and two pages of emails between the FAA and Boeing discussing the letters were located. *Id.* As with the first FOIA request, the SOO Branch attempted to locate any records of phone calls from Boeing to the FAA that would be responsive to the request, but found none. *Id.* ¶ 18.

### 3.    The FAA's Subsequent Search

Even after the commencement of litigation, the FAA agreed to conduct an additional search for responsive documents in response to Plaintiff's request. Mansfield Decl. ¶ 7. The manager of the Outreach Services Section of the AIR, initiated a supplemental search for responsive records. *Id.* ¶ 17. The manager contacted the Office of Audit and Evaluation and requested it conduct a search for any Hotline Reports filed

by Joshua Dean, the individual noted in Plaintiff's letter. *Id.* ¶ 17. Indeed, several other individuals were involved in the search for responsive records, including subject matter experts within the ICM Division of the AIR. *Id.* ¶ 17-18. While there were three Hotline Reports from Mr. Dean located, they were determined not to be responsive to either of Plaintiff's two FOIA requests. *Id.* ¶¶ 17, 18, 21, 22. Indeed, upon careful review and conferral, the FAA did not find any responsive documents in either the AIR or in the Office of Audit and Evaluation. *Id.* ¶¶ 20-26.

Accordingly, the Declarations of John Piccola and Lisa Mansfield establish that the FAA's search was reasonably calculated to uncover records in the FAA's possession responsive to Plaintiff's FOIA Request.

**B.    The FAA Properly Withheld Information Under Applicable FOIA Exemptions.**

1.    Exemption (b)(3)

Exemption 3 to FOIA's disclosure requirements provides that an agency is not required to disclose records that are "specifically exempted from disclosure by statute," if the statute "requires that matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision." *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). It was promulgated in recognition of other, agency-specific statutes limiting the disclosure of information held by the government and incorporates those statutes within the exemptions to FOIA. *See Balridge v. Shapiro*, 455 U.S. 345, 352-353 (1982); *Essential Info, Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998).

Courts apply a two-pronged inquiry when evaluating an agency's invocation of FOIA exemption 3. *See Sims*, 471 U.S. at 167-168. First, the court must determine whether the statute identified by the agency qualifies as an exempting statute under

FOIA exemption 3. Second, the court should consider whether the withheld material falls within the scope of the exempting statute. *See id*. As the D.C. Circuit has recognized, "Exemption 3 presents considerations distinct and apart from the other eight exemptions." *Ass'n of Retired R.R. Workers*, 830 F.2d at 336. "[I]ts applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Id*. (quoting *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978)).

The information at issue in this case falls squarely within the scope of 49 U.S.C. § 40123 and its attendant regulations. Piccola Decl. ¶ 25.

### a.    49 U.S.C. § 40123

As stated above, the AIR VDRP has its legal foundation in 49 U.S.C. § 40123, which is a statute that protects from disclosure under the FOIA safety or security information that is voluntarily provided to the FAA. Elgas Decl. ¶ 6. For information to receive such protection, its disclosure must inhibit its voluntary provision, the receipt must aid in fulfilling the FAA's safety and security responsibilities and, withholding the information from release is consistent with the FAA's safety and security responsibilities. *Id.*; 49 U.S.C. § 40123. Additionally, 49 U.S.C. § 40123, requires the FAA to issue regulations to implement the statute. *Id.*; 49 U.S.C. § 40123(b).

### b.    14 C.F.R. Part 193

As also described earlier, the FAA issued its implementing regulations of 49 U.S.C. § 40123 at 14 C.F.R part 193. Part 193 describes "…when and how the FAA protects from disclosure safety and security information that [is] submit[ed] voluntarily to the FAA." Elgas Decl. ¶ 6. Namely, voluntarily provided safety and security information may be submitted to the FAA under the auspices of a program that is established via the procedures described in Part 193. 14 C.F.R. § 193.5(a) (2001). Part 193 states that for each voluntary safety reporting program the FAA establishes, the FAA will issue an order designating information as protected. 14 C.F.R. § 193.5(d)

13

1  (2001). Once it designates information as protected, the FAA may not disclose the

2  information except under extremely narrow circumstances provided in Part 193, which

3  do not include release pursuant to FOIA. 14 C.F.R. § 193.9 (2001).

4          *c.    FAA Order 8000.89 and Advisory Circular 00-68*

5        The AIR VDRP was established under the procedures described in Part 193, to

6  which FAA Order number 8000.89 ("Designation of Voluntary Disclosure Reporting

7  Program (VDRP) Information As Protected From Public Disclosure Under 14 C.F.R.

8  Part 193") was issued and protects from disclosure documents and information received

9  under the AIR VDRP. Elgas Decl. ¶¶ 8-9.

10        In this case, the FAA properly determined that all of the responsive records sought

11  by Plaintiff in its two FOIA requests were either submitted by Boeing to the FAA under

12  the auspices of the AIR VDRP or directly related to Boeing's VDRP submission, and

13  fall into one of the categories of information protected by FAA Order 8000.89. Piccola

14  Decl. ¶ 26-28. For such reasons, the records sought by Plaintiff in its two FOIA requests

15  were properly withheld under FOIA exemption 3.

16          2.   <u>Exemption (b)(4)</u>

17        Exemption 4 to the FOIA exempts from disclosure "trade secrets and commercial

18  or financial information obtained from a person [that is] privileged or confidential." 5

19  U.S.C. § 552(b)(4); *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189,

20  1194 (9th Cir. 2011). It ensures that federal agencies will continually be able to obtain

21  necessary and reliable commercial and financial information from outside the

22  government. *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 877-78 (D.C. Cir.

23  1992) (citing *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C.

24  Cir. 1974)).  Specifically, a "government agency must demonstrate that the information

25  it sought to protect is '(1) commercial and financial information, (2) obtained from a

26  person or by the government, (3) that is privileged or confidential.'" *Watkins*, 643 F.3d

27  at 1194. Furthermore, "where commercial or financial information is both customarily

28  and actually treated as private by its owner and provided to the government under an

assurance of privacy, the information is 'confidential'" within the meaning of FOIA exemption 4. *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019). Finally, the Ninth Circuit has stated that FOIA exemption 4 "is meant to protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise by the government that the information will be kept confidential." *Gen. Servs. Admin. v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969). In this case, the FAA has properly satisfied all of the enumerated requirements.

### a.    The Withheld Information is Commercial

With respect to the material withheld under FOIA exemption 4, the FAA's SOO Branch determined that the withheld information was submitted by Boeing as part of the AIR VDRP. Piccola Decl. ¶ 34. The documents submitted by Boeing, as well as the AIR VDRPs themselves, contain proprietary information including internal compliance analyses, descriptions of methods of compliance for certification purposes, internal safety and quality assessments, investigative and root cause and corrective action analyses, and technical part and part installation data. *Id.* ¶ 35; Declaration of Jennifer Nowak ("Nowak Decl.") ¶¶ 14-15. The FAA found the documents contain sensitive Boeing supplier information, many of which are confidential and are mutually protected by contractual nondisclosure provisions between Boeing and its supplier. Piccola Decl. ¶ 35. As such, the FAA has demonstrated that the information is seeks to protect is commercial information.

### b.    The Withheld Information Was Obtained from a Person

Under the Administrative Procedure Act, the term "person" refers to individuals as well as to a wide range of entities and has been found to include corporations, banks, state governments, agencies of foreign governments, and Native American tribes or nations who provide information to the government. 5 U.S.C. § 551(2) (2018) (defining "person" as "an individual, partnership, corporation, association, or public or private organization other than an agency"); *see also, e.g.*, *Nadler v. FDIC*, 92 F.3d 93, 95 (2d

Cir. 1996) (quoting definition of "person" found in Administrative Procedure Act); Dow Jones Co. v. FERC, 219 F.R.D. 167, 176 (C.D. Cal. 2003) (same).

In this case, the FAA received information germane to Boeing's AIR VDRP directly from a Boeing employee acting on behalf of Boeing. *Id.* ¶ 36. As such, the FAA has demonstrated that the information is seeks to protect is from a "person."

> c.  *Boeing Actually and In Practice Treats The Withheld Information as Confidential and/or Closely Held*

Furthermore, in this case, the FAA understands that Boeing actually, and in practice, keeps the information and enclosures contained in the AIR VDRP strictly private, based on Boeing's historical treatment of similar records, the markings Boeing includes on nearly every page of the records, and the information Boeing provides under penalty of perjury in its declaration. Piccola Decl. ¶ 37. Boeing noted in each VDRP report that the information contained therein is not "customarily or actually released to the public" and contains proprietary information. *Id.* ¶¶ 38-39. Indeed, when provided with a copy of the documents sought by the Plaintiff in this case, Boeing has objected on the basis of the confidential and proprietary nature of the information. Nowak Decl. ¶ 23. As such, the FAA has demonstrated that the owner of the information the FAA seeks to protect, Boeing, treats the information as confidential.

> d.  *The FAA Has Provided Explicit and Implied Assurances to Boeing That the FAA Will Keep Proprietary Information Contained in AIR VDRP Submissions Private*

The FAA has provided Boeing both explicit and implied assurances that it will keep private Boeing's proprietary AIR VDRP disclosures and documents associated with the disclosures. Piccola Decl. ¶ 43. All information that is protected by FAA Order 8000.89 is provided to the FAA under the assurance that it will not be released. *Id.* ¶ 44; Nowak Decl. ¶ 21. For years, Boeing has given the FAA access to similar information with the expectation that the FAA would follow the process as described in FAA Order 8000.89 and AC 00-68, and the FAA has done so. Piccola Decl. ¶ 44; Nowak Decl. ¶ 20.

Continued protection of the information allows the FAA to more effectively perform oversight and to ensure the safety of the aircraft that it certifies. *Id.* ¶ 44.

Accordingly, the records sought by Plaintiff in its two FOIA requests were properly withheld under FOIA exemption 4.

### 3. Exemption (b)(6)

Exemption (b)(6) applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" "has a broad, rather than a narrow meaning." *Forest Service Empls. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (citing *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1273 (9th Cir. 1984) (quotation omitted). For example, "[g]overment records containing information that applies to particular individuals satisfy the threshold test of Exemption 6." *Id.*

In this case, FOIA exemption 6 was invoked for the letters to the FAA from Boeing and the email communications between the FAA and Boeing with respect to personal information including names, email addresses, and cell phone numbers of both FAA employees and Boeing employees. Piccola Decl. ¶ 49. The employees of both Boeing and the FAA have a privacy interest their names, email addresses, and cellphone numbers. *Id.* ¶ 50. The release of such information could subject such employees to possible harassment and enable the public to contact them during non-working hours. *Id.* Conversely, Plaintiff has articulated no such public interest in such information. *Id.* For such reasons, the FAA properly withheld the requested information in accordance with FOIA exemption 6.

### C. The FAA Provided a Sufficiently Detailed *Vaughn* Index to Identify and Explain Its Withholdings.

The purpose of a *Vaughn* index is to ameliorate the imbalance inherent to FOIA litigation: that the agency knows the contents of its records while the Plaintiff and the Court do not. *Ogelsby*, 79 F.3d at 1178 (1996); *see King v. Dep't of Justice*, 830 F.2d

210, 218 (D.C. Cir. 1987); *Campaign for Responsible Transplantation v. FDA*, 180 F. Supp. 2d 29, 32 (D.D.C. 2001). A *Vaughn* index is intended, in part, to afford the requester a meaningful opportunity to challenge the agency's claims of exemption. *Ogelsby*, 79 F.3d at 1178. There is no set formula for a *Vaughn* index. Rather, "it is well established that the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997); *see Hinton v. Dep't of Justice*, 844 F.2d. 126, 129 (D.C. Cir. 1988) (holding that a *Vaughn* index is sufficient if "the requester and the trial judge [are] able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure"). In this Circuit, this means "identify[ing] each withheld document, describ[ing] its contents to the extent possible, and giv[ing] 'a particularized explanation of why each document falls within the claimed exemption.'" *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 695 (9th Cir. 2012) (quoting *Lion Raisins v. Dep't of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004)).

In this case, the FAA has filed a *Vaughn* index that provides a detailed description of each record withheld from Plaintiff; the number of pages of the entire record, including attachments; the number of pages withheld; the claim of relevant exemptions; and a description of the withheld or redacted document. As explained in the *Vaughn* index and herein, the information that FAA redacted and withheld from the records produced to Plaintiff is exempt from disclosure under FOIA exemption 5. See 5 U.S.C. §§ 552(b)(5).

## D.    The Records at Issue Were Not "Reasonably Segregable."

FOIA requires that if a record contains information that is exempt from disclosure, an agency must disclose any "reasonably segregable" information after deletion of the exempt information, unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Willamette Indus., Inc. v. United States*, 689 F.2d 865, 867-68 (9th Cir. 1982) (internal quotation marks and citations omitted). The agency must provide a "detailed justification" for its claim of non-segregability, but "is not

required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citation omitted). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (citing 5 U.S.C. § 552(a)(4)(B), (b)). "The agency can meet its burden by offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries*, 539 F.3d at 1148 (internal citations omitted); *see Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015).

The FAA described each document withheld and has established, with reasonable specificity, that it withheld only exempt documents that could not reasonably be segregated. The FAA properly concluded that the agency could release no information without compromising information exempt under exemptions 3. Piccola Decl. ¶ 47; *see Johnson*, 310 F.3d at 776 (holding that the segregability requirement was met when the *Vaughn* Index described each document withheld and applicable exemption and when an agency affidavit stated that a review of documents had been conducted and that no releasable information could be reasonably segregated).

Accordingly, the FAA has complied with the FOIA's segregation requirements.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully request that this Court grant summary judgment in favor of the Federal Aviation Administration and against Plaintiff Glancy Prongay & Murray LLP.

1                        Respectfully submitted,

2 Dated: June 5, 2024           E. MARTIN ESTRADA
United States Attorney

3                        DAVID M. HARRIS
Assistant United States Attorney

4                        Chief, Civil Division
JOANNE S. OSINOFF

5                        Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

6

7

8                        */s/ Randy Hsieh*

9                        RANDY HSIEH
Assistant United States Attorney

10

11                        Attorneys for Defendant Federal Aviation Administration

12 **CERTIFICATE OF COMPLIANCE UNDER L.R. 11-6.2**

13      The undersigned, counsel of record for Defendant, certifies that this brief contains

14 6,294 words, which complies with the word limit of L.R. 11-6.1.

15

16 Dated: June 5, 2024           */s/ Randy Hsieh*

17                        RANDY HSIEH
Assistant United States Attorney

18

19

20

21

22

23

24

25

26

27

28